UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VARRON WILSON, #B57716 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-00805-GCS |
| | ) |
| ALESHIA MOLLS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION

Now before the Court is the Defendant's motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 28, 29). Plaintiff opposes the motion. (Doc. 41). The Court held an evidentiary hearing on the motion on January 20, 2021. Based on the reasons delineated below, the undersigned **GRANTS** the motion for summary judgment on the issue of exhaustion of remedies.

### FACTUAL BACKGROUND

Plaintiff Varron Wilson, an inmate of Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Wilson alleges that Defendant was deliberately indifferent to a serious medical need in failing to provide treatment for a spider bite. He requests monetary relief.

On or about February 1, 2018, Wilson was bitten by a spider on his left side. (Doc. 1, p. 5). He submitted two request slips to sick call to report the incident and spoke to nurses on several occasions to inform them of the worsening injury. *Id.* After approximately two weeks, Wilson was seen by Defendant Molls (Nurse Molls), who treated him at that time. *Id.* Two days after being seen by Nurse Molls, he was evaluated by a nurse practitioner and transferred to the healthcare unit where he was given an unspecified intravenous treatment. *Id.* at p. 5-6. By that time, Wilson had developed several boils around the injury and was in significant pain that restricted movement on his left side. *Id.* at p. 6. The medical staff was unable to diagnose him. *Id.* Eventually, a scar developed in the spot where Wilson was bitten. *Id.*

Wilson contends that he filed a grievance prior to being seen by Nurse Molls on "February 11th or 12th," of 2018, but he was never given a copy of the grievance. (Doc. 1, p. 4, 6). Having received no response after several months, Wilson states he made verbal inquiries into the grievance and was told that his grievance had been given to the medical department, per procedure. (Doc 41. p. 3). Specifically, Wilson states he contacted clinical services in September 2018 to inquire about the grievance but did not receive a response. *Id.* at p. 4.

In October 2018, Wilson was transferred to the Menard Medium Security Unit. Shortly thereafter, Wilson states he spoke with his counselor, Misti Price, about the grievance and was told that it had likely been discarded due to the transfer. He states he was also told that he was time-barred from re-filing the grievance. Wilson filed suit on July 25, 2019 alleging violations of his constitutional rights. On July 5, 2020, Wilson filed

a second grievance as a follow-up to his initial grievance.

The Court conducted a preliminary review of Wilson's complaint pursuant to 28 U.S.C. § 1915A. Wilson was allowed to proceed on one claim against Defendant Molls as follows:

> **Count 1**: Eighth Amendment claim against Nurse Molls for deliberate indifference to Wilson's serious medical need of treatment for his spider bite.

(Doc. 7, p. 3). All other claims mentioned in the Complaint were dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1] *Id.*

On July 27, 2020, Defendant filed a motion for summary judgment on the issue of failure to exhaust administrative remedies. (Doc. 28, 29). Wilson filed his opposition to the motion on December 12, 2020. (Doc. 41). The Court held an evidentiary hearing on January 20, 2021 and took the matter under advisement. (Doc. 44). The Court heard testimony from Plaintiff.

Wilson testified that he was aware of the grievance process at Menard. He maintained that he personally spoke with correctional officers several times, including during face-to-face meetings, and made multiple inquiries regarding the lack of response to his grievance. Thus, he contends that he followed the grievance procedure to the best of his ability.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures

---

[1]  *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-556 (2007)(noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]").

and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The statute provides, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*,

286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit set forth the following procedures where failure to exhaust administrative remedies is raised as an affirmative defense:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the Illinois Department of Corrections, Wilson was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the ARB within 30 days after the date of the decision." *Id.* The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written

report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## ANALYSIS

Defendant asserts that she is entitled to summary judgment because Wilson failed to exhaust his administrative remedies prior to filing his complaint. Specifically, Defendant relies on the Declaration of Yvette Baker, Grievance Officer, which states that there is no evidence of grievances or emergency grievances filed by Wilson from February 2018 to July 2019. (Doc 33, p. 3). Defendant also cites the Declaration of Sherry Benton, ARB Chairperson, in which Benton asserts that she was unable to find any record of grievances regarding the claim in this suit filed by Wilson from February 2018 to July 2019. (Doc. 34, p. 3).

If the Court finds that Plaintiff's attempts to file a grievance were thwarted, he will be allowed to proceed with his suit, as his administrative remedies have been rendered effectively unavailable. *See Dole*, 438 F.3d at 809. For example, a Plaintiff who files a grievance in accordance with local procedure but does not receive a response has not necessarily failed to exhaust his administrative remedies. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008)(where a plaintiff files a grievance but receives no ruling he is not required to file an appeal). However, the Court must assess Wilson's credibility in order to accept his contention that he was thwarted in his attempts to exhaust his

remedies. *See, e.g.*, *McIntosh v. Wexford Health Sources, Inc.*, No. 19-1095, 2021 WL 406105, at *2 (7th Cir. Feb. 5, 2021)(affirming the district court's decision to grant the defendants' motion for summary judgment due to the plaintiff's lack of credibility).

The Court does not find Wilson's testimony regarding the filing of this grievance credible. Wilson does not have a copy of the grievance he claims to have filed in February of 2018. Therefore, he can only corroborate his assertions through his self-serving testimony, which the undersigned finds lacking. Wilson asserts that he spoke with his correctional counselors several times regarding his grievance. The record, however, contradicts this assertion. The cumulative counseling summary provided by Defendant does not make mention of any discussion of grievances between February 2018 to July 2019. *See* (Doc. 45). In fact, the first mention of a grievance relating to the presently discussed injury was on July 15, 2020, when Wilson discussed with his counselor the second grievance that he had filed on July 5, 2020. *Id.* at p. 3. The record clearly does not support Wilson's claims that he made multiple inquiries and had various face-to-face discussions regarding his February 2018 grievance. This is obviously a cause for concern and calls into question Wilson's credibility.

The Court is similarly skeptical of the timeline represented by Wilson. Wilson had ample opportunities to inquire about his February 2018 grievance. Instead, Wilson waited more than two years until July 2020 to follow-up with prison officials regarding his initial grievance. This was also almost a year after Wilson filed the present lawsuit. When questioned, Wilson could not provide the Court with an explanation for his failure to follow-up on his initial grievance. The Court further notes that it issued an "Initial

Scheduling and Discovery Order" on May 28, 2020, in which it informed the parties that the exhaustion of local remedies was an issue. (Doc. 26, p. 4-5). The Court also set deadlines for the Defendant to file a motion for summary judgment regarding exhaustion. *Id.* at p. 4. It was only after that scheduling order was issued that Wilson followed up and inquired as to the status of his original grievance, presumably because he knew that it would be an upcoming issue before the Court. This further erodes the undersigned's belief in Wilson's testimony. Thus, the Court does not find Wilson credible regarding the alleged filing of his grievance in February 2018.

## CONCLUSION

Based on the foregoing, Defendant's summary judgment motions as to exhaustion of administrative remedies is **GRANTED**. The Court **DISMISSES** without prejudice Wilson's claims against the Defendant. The Court **DIRECTS** the Clerk of the Court to enter judgment and close the case.

**IT IS SO ORDERED.**

**DATED: February 18, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.02.18 09:19:59 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**